David N. Makous, SBN 82409
dmakous@lhlaw.com
Keith H. Fichtelman, SBN 262476
keith.fichtelman@lhlaw.com
LEE, HONG, DEGERMAN, KANG & WAIMEY
660 South Figueroa Street, Suite 2300
Telephone: (213) 623-2221
Facsimile: (213) 623-2211

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SORIA, an individual; MARIA CARLOS, an individual; MARITIME DOCUMENTATION CENTER CORP., a Montana corporation; U.S. VESSEL DOCUMENTATION, INC., a California corporation; and VESSEL DOCUMENTATION ONLINE LLC, a Montana LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> STABLER & ASSOCIATES, INC., a California corporation; DON STABLER, an individual; JOB ACLAN, an individual; ARMINEH GORKIAN-ACLAN, an individual; and U.S. VESSEL REGISTRAR, a California corporation, <br><br> Defendants. | Case No.: 5:19-cv-1976 <br><br> **COMPLAINT FOR:** <br><br> 1. **DIRECT COPYRIGHT INFRINGEMENT;** <br> 2. **VIOLATION OF THE DEFENSE OF TRADE SECRETS ACT;** <br> 3. **VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT;** <br> 4. **NEGLIGENCE;** <br> 5. **PROFESSIONAL MALPRACTICE;** <br> 6. **BREACH OF FIDUCIARY DUTY;** <br> 7. **BREACH OF CONTRACT;** <br> 8. **FRAUD AND DECEIT;** <br> 9. **CONVERSION;** <br> 10. **FALSE REPRESENTATIONS AND ADVERTISING [15 U.S.C. § 1125(a)];** |

1

**COMPLAINT**

11. **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 AND COMMON LAW;**
12. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**DEMAND FOR JURY TRIAL**

2

**COMPLAINT**

Plaintiffs John Soria, Maria Carlos, U.S. Vessel Documentation, Inc., Maritime Documentation Center Corp., and Vessel Documentation Online LLC (collectively,"Plaintiffs"), for their Complaint against Stabler & Associates, Inc. Don Stabler, Job Aclan, Armineh Gorkian-Aclan, and US Vessel Registrar (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 102, 501 and 504 (Unauthorized Copyright and Display of Copyrighted Works); conversion; misappropriation of trade secrets under the Defend Trade Secrets Acts, 18 U.S.C. 1836 and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*; false representations and advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under Section 17200 of California Business and Professions Code and common law; breach of contract; breach of fiduciary duty; fraud and deceit; negligence; professional malpractice; and intentional interference with prospective economic advantage.

2.     As set forth in greater detail below, Plaintiffs are in the vessel documentation business, and the Defendants (exclusive of Gorkian) are the fiduciaries of the Plaintiffs, are IRS Enrolled Agents and tax professionals, and were retained by Plaintiffs to provide assistance with tax returns and dealing with taxing authorities. These fiduciaries collected unearned fees, and never provided any services to Plaintiffs. At the same time, from May to the present, at least some of the Defendants (Aclan and Gorkian), using the cover of the SAI

3

**COMPLAINT**

engagement, undertook a calculated and premeditated scheme to launch a competitive vessel documentation website called usvesselregistrar.us and usvesselregistrar.com. To do so Defendants copied Plaintiffs' website content (while using similar domain names and advertising buys), and grossly abused and misused their relationship of trust to ask for and demand from all of Plaintiffs companies' Plaintiffs confidential and trade secret information and documents, alleged by Defendants to be necessary to represent Plaintiffs in the retainted tax matters. These actions were comprised generally of seeking all of the Plaintiffs' financial information and banking records, and constant interrogation on Plaintiffs' business practices, margins, pricing, costs, ideas, marketing and advertising schemes, operations, and back office and consumer facing practices, all the while causing irreparable and incalculable damage, increased costs, and loss of business by Plaintiffs.

3.      Defendants have provided no services to Plaintiffs while reaping the benefits of Plaintiffs' business, labor and goodwill.

## THE PARTIES

4.      Plaintiff John Soria ("Soria") is an individual residing and working in Chino Hills, California and the President and Owner of the other named Plaintiff entities.

5.      Plaintiff Maria Carlos ("Carlos") is an individual residing and working in Chino Hills, California and an acting employee of the other named Plaintiff entities. Soria and Carlos are husband and wife.

6.    Plaintiff Maritime Documentation Center Corp., is a Montana corporation ("MDC") in good standing and registered to do business in California, with its principal place of business in Chino Hills, California.

7.    Plaintiff U.S. Vessel Documentation, Inc. ("USVD") is a corporation in good standing and organized and existing under the laws of the State of California with its principal place of business in Chino Hills, California.

8.    Plaintiff Vessel Documentation Online LLC, ("VDO") is a Montana limited liability company, in good standing, registered to do business in California, with its principal place of business in Chino Hills, California.

9.    Defendant Stabler & Associates, Inc. ("SAI") is a California corporation with its principal place of business in Sherman Oaks, whose principal operating officer and owner is Defendant Don Stabler("Stabler"), an individual and licensed IRS Enrolled Agent at the same location.

10.    Job Aclan, ("Aclan") is an individual working for SAI at their offices and is also an IRS Enrolled Agent, who works closely with Stabler on client matters and lives at 9420 Aqueduct, North Hills, California 91343 and/or 18017 Chatsworth Street, Suite 101, Granada Hills, California 91344.

11.    Armineh Gorkian-Aclan ("Gorkian"), is an individual and the wife of Aclan and lives and works at 9420 Aqueduct, North Hills, California 91343 and/or 18017 Chatsworth Street, Suite 101, Granada Hills, California 91344

12.    Gorkian is the named incorporator and principal officer of Defendant US Vessel Registrar ("USVReg"), a California corporation, in North Hills California, formed on May 28, 2019 by Gorkian in collaboration with Aclan.

**COMPLAINT**

13.     On   May   24,   2019   Aclan   obtained   the   domain   name usvesselregistrar.us which is the domain name for the website for USVReg, which is registered to Jjob Aclan [sic] listing the registrant address as 9420 Aqueduct, North Hills, California 91343 with an email address of "registrarjohn@gmail.com."

14.     On   May   24,   2019   Gorkian   obtained   the   domain   name usvesselregistrar.com which is the domain name for the website for USVReg and is registered to Armineh Gorkian at 18017 Chatsworth Street, Suite 101, Granada Hills, California 91344, and previously registered at 9420 Aqueduct Avenue, North Hills, California 91343.

15.     Plaintiffs are informed and believe, and on that basis allege, that during all times mentioned herein, each of the defendants was the duly authorized agent, servant or representative of each other defendant and was acting at all times both, on behalf of and within the course and scope of its agency, or representative capacity, with the knowledge and consent of the other defendant, and that all Defendants acted in a conspiracy on all matters herein.

16.     Plaintiffs are unaware of the identities of any other conspirators and reserve the right to amend this Complaint to add them as defendants upon verification.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over Plaintiffs' claims under and pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 18 U.S.C. § 1836(c); 15 U.S.C. § 1121, and 28 U.S.C. § 1367.

**COMPLAINT**

18.     This Court has personal jurisdiction over the defendants because defendants are located in California; defendants transact business in California; and defendants have committed and threatened to commit tortious acts in this judicial district.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), (c)(1), (c)(2), and 1400.

## GENERAL ALLEGATIONS

20.     Plaintiffs and their businesses are private enterprises which, for a fee, assist vessel owners in maintaining compliance with the legal requirements of the U.S. Coast Guard ("USCG") to obtain and maintain vessel registration for civilian vessels operating on the navigable waters of the United States.  These registrations are processed by the National Vessel Documentation Center (NVDC), a division of the USCG.

21.     These businesses operate through various websites created by Plaintiffs Soria and Carlos with their various companies. In 2016 they launched their first such site through the Defendant US Vessel Documentation Inc., originally operating it at vesseldocumention.us.

22.     In 2016 this website and business was hijacked by Edward Riener on account of which Plaintiff USVD filed a suit in this District and obtained preliminary injunctive relief and eventually a permanent injunction, recovering this website and business. The case was entitled U.S. Marine Surveyors, Inc., a California corporation; U.S. Vessel Documentation, a California corporation, Plaintiffs, vs. Edward Riener, an individual; Edward Riener d.b.a. Elemental

**COMPLAINT**

Web design, an unknown entity; Jack Hennings, an individual; Sean Gorman, an individual; Allen Larson, an individual, Defendants, Case No.: 2:16-cv-05360-PA-FFMx. Because of this hijack, during the pendency of the case, Plaintiff USVD was forced to build a brand new USVD website which operated through the domain name uscgdocumentation.us from July 2016 to 2017.

23.    In 2017 Plaintiffs formed and launched two additional vessel documentation companies and websites which continue to operate: (a) MDC which operates through the domain name maritimedocumentation.us; and (b) VDO which operates through the domain name vesseldocumentation.us.

24.    On January 27, 2017 Plaintiffs obtained the U.S. copyright registration of the website content of their USVD website, TX0008544346. Furthermore, Plaintiffs posted copyright notices on the pages of Plaintiffs' Websites indicating Plaintiffs' ownership.

## DEFENDANTS' UNLAWFUL ACTS

**A. Defendants' malfeasances arising out of their fiduciary relationship with Plaintiffs.**

25.    On May 13, 2019 Soria and Carlos were searching for a tax attorney to assist them and their companies in tax issues for the years 2017, 2018 and to assist them in payroll and tax issues arising out of actions by their payroll vendor, PayChex.  A tax attorney referred them to Stabler and Associates.

26.     On May 13 Soria called Stabler and spoke directly to Defendant Don Stabler, during which call they discussed the many issues they were having.  Stabler said he could help the Plaintiffs resolve all the tax issues.

27.     A meeting was set at Stabler's office for May 21, 2019 at 15233 Ventura Blvd. Sherman Oaks 91403 at 1 p.m. Soria and Carlos were told to bring copies of all of their companies' documents (there were many more companies than just the Plaintiffs named here, that were considered) including articles of formation, bank statements, company profits generated by authorize.net (Plaintiffs receipts and payment histories). Present at this meeting were Stabler and Associates representative Don Stabler, and his associates Job Aclan and Chris Lee. Stabler identified Aclan as his "right hand man."

28.     During this meeting Stabler told Soria and Carlos that they were IRS "Enrolled Agents", a special status to assist on tax matters. Also during this extended meeting SAI asked for personal and financial information in considerable detail and Soria and Carlos provided such, as they trusted this would be in confidence as SAI were confidants.  Soria and Carlos were told that SAI genuinely needed this information. All details regarding the various companies and their operations were discussed, and SAI saw the exact revenues and profits of the Plaintiffs. Stabler and Aclan indicated that they were extremely impressed by the profits Plaintiffs were making and began asking in detail about Plaintiffs' business model.

29.     Over the next few weeks Aclan called Soria (from various phone numbers). On the first call on May 22 Aclan called Soria's cell, and was placed on speaker with Carlos present.  Aclan said he was calling to get information from

9

**COMPLAINT**

them which he needed in order to help them. The topics of the conversation were wide ranging but comprised of the following confidential and trade secret information about the operations of MDC and VDO:

    a.    Regarding their websites, he asked how they functioned and if they were on Word Press (which is the basic app to build a website from);

    b.    He asked about Plaintiffs' fees to their customers (vessel owners);

    c.    He asked about the NVDC government filing fees and how they were paid to the NVDC;

    d.    He asked if Plaintiffs' customers received a confirmation email after filing;

    e.    He asked where he could locate the NVDC government forms and asked them for the NVDC website location and the NVDC contact phone numbers.

30.    Carlos stopped Aclan at one point and asked Aclan why he was asking so much about the NVDC, to which he replied "we are going to try and get you money back because Government agencies have poor accounting and have double billed you more than likely so we will reach out to the NVDC for records on your company." Carlos and Soria believed him.

31.    Aclan continued probing in this same call, asking Soria and Carlos for additional detail on more confidential and trade secret information:

    a.    about the nature and operation of Plaintiffs' operating software;

**COMPLAINT**

b.      about how the Government (NVDC) forms were generated from Plaintiffs' website, during which Soria revealed how the Plaintiffs' service is so fast;

c.      about Plaintiffs' proprietary online advertising and SEO strategies, who Plaintiffs' uses for online ad placement, how Google Adwords operates, and Plaintiffs' proprietary selective word purchases and bidding practices;

d.      about who built Plaintiffs' websites;

e.      about what merchant (payment) service Plaintiffs used;

f.      whether Plaintiffs' used PayPal, and what Plaintiffs' thought about PayPal;

g.      other questions about Plaintiffs business model and intellectual property.

32.     When Soria and Carlos asked during this call why it was necessary, Aclan repeatedly said "these details are a must."

33.     After this call Aclan called Soria several more times during the next 3 to 4 weeks with constant and similar questions about MDC and VDO.

34.     On June 4, Stabler sent over a retainer letter requiring a $25,000 flat retainer, which the Plaintiffs signed and paid to SAI by June 10.

35.     It was not until July 9 that SAI and Aclan told Soria and Carlos that they needed a signed Power of Attorney (POA) from the Plaintiffs in order for SAI to deal with the IRS.  When a power of attorney, form 2848, was provided to Plaintiffs by SAI, they immediately signed it. On that POA, it identified that several

11
**COMPLAINT**

of the Defendants were IRS enrolled agents with CAF# for each:   CAF# Job Aclan 030946215R; Don Stabler CAF# 900632922R; Seung Y Lee CAF# 0308-24780R.

36.     The IRS rejected this POA, but it was not until over a month after the IRS rejected the POA submitted by Defendants to the IRS, that Aclan told Soria that it had been rejected. The basis for the rejection was never disclosed to the Plaintiffs.

37.     When Soria told Aclan in August that the IRS was threatening a levy and began showing up at Plaintiffs offices, Aclan told Plaintiffs not to pay the outstanding tax due and he would take care of it.

38.     But SAI and Stabler and Aclan did nothing. On September 11, 2019 Soria called Don Stabler very upset because from May 21 to the present, Stabler SAI and Aclan had done virtually nothing.

39.     In fact the IRS had previously written to SAI Aclan and Stabler and said that errors were committed by the Defendants and no documents could be provided.


**B. <u>Discovery in October by Plaintiffs of Defendants Secret Corporate Formation and Launch of the Competitor US Vessel Registrar in May-June 2019.</u>**


40.     On October 9, 2019 (while still dealing with SAI and Paychex) Plaintiffs were concerned about a competitor's website at usvesselregistrar.us and usvesselregistrar.com, and looked into it as the site had a strong resemblance to Plaintiffs websites. On account of this investigation Plaintiffs were advised that one

of these domain names was registered to jJob Aclan[sic] who lives at either 9420 Aqueduct, North Hills, California 91343 or 18017 Chatsworth Street, Suite 101, Granada Hills, California 91344 with an email address of registrarjohn@gmail.com., and the other of these domain names was registered to Gorkian, who also lives at either 9420 Aqueduct, North Hills, California 91343 or 18017 Chatsworth Street, Suite 101, Granada Hills, California 91344. They then found out that Aclan and Gorkian were married. Plaintiffs also then found out that Gorkian is the named incorporator and principal officer of Defendant US Vessel Registrar ("USVReg"), a California corporation, at the same North Hills address and was formed on May 28, 2019.

41.  Plaintiffs were stunned to discover this and immediately sent a letter to Paychex to stop dealing with SAI on any matter, and Plaintiffs consulted with counsel.

42.  On information and belief, Defendants launched their USVREG website on June 4, 2019.

43.  Because of Defendants illicit usage of the extensive confidential and trade secret information and documents provided to SAI Stabler and Aclan, and the copying of the website content of Plaintiffs by Defendants, the operation of USVesselRegistrar company websites was enabled, creating a competitor, increasing dramatically the costs of sponsored keyword buys by Plaintiffs, while giving Defendants an unearned and unfair advantage. Defendants' have thus forced a bidding war with their own clients, using Plaintiffs' own web content and confidential business information and strategies to compete for web traffic. The cost to Plaintiffs to compete with Defendants illicit websites is over $20,000

13

**COMPLAINT**

per day instead of $5,000 per day. Contributing to this increased cost, Plaintiffs believe, is that starting about June 4, 2019 - when Defendants launched their knock off website - Defendants also appeared to have launched a "click fraud" campaign by having robot clicks on Plaintiffs' keywords, increasing Plaintiffs key word clicks by about 2,000 clicks per day which increases Plaintiffs costs.

## C. **Defendants created their USVesselRegistrar website using Plaintiffs' copyrighted material**

44.     Defendants are currently operating their website modelled after Plaintiffs websites and largely copied and stolen from the Plaintiffs Website content, which has been registered since 2017 as a copyright with the US Copyright Office.

45.     Defendants are also using a corporate and website name (US Vessel Registrar) bearing similarity to Plaintiff US Vessel Documentation corporate name.

46.     To disguise their actions Aclan identified his contact information on the domain name register as "registrarjohn@gmail.com", for the purpose of hiding his own identity or adopting that of John Soria, a plaintiff and operator of Plaintiffs' websites.

47.     Defendants proactively conspired to conceal and disguise their actions from Plaintiffs, while pretending to be actively assisting them in their IRS related representation.

**FIRST CLAIM FOR RELIEF**

(Direct Copyright Infringement – 17 U.S.C. §101, *et seq.*)

(Against All Defendants)

48.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

49.   USVD is the owner of the registered copyright TX0008544346, referenced above, which are protected under the Copyright Act of 1976, 17 U.S.0 §§ 102 and 302, which are also licensed for usage by USVD to MDC and VDO.

50.   The foregoing acts of Defendants, and each of them, violate Plaintiffs' exclusive rights to display, reproduce, and distribute the copyrighted works in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106. Such acts constitute copyright infringement under 17 U.S.0 § 501.

51.   Unless restrained, Defendants will continue to engage in the acts complained of herein, all to Plaintiffs' irreparable injury.

52.   Defendants unlawful acts set forth herein and above constitute willful copyright infringement under 17 U.S.C. § 504. As a result of Defendants' unlawful and willful acts, Plaintiffs have been, and will continue to be, irreparably injured, unless Defendants are enjoined immediately by this Court.

53.   As a direct and proximate result of the foregoing acts and conduct of Defendants, and each of them, Plaintiffs have suffered damages and Defendants have made substantial profits in an amount which cannot now be ascertained or computed, but that is capable of proof at trial and within an accounting.

## SECOND CLAIM FOR RELIEF

(Violation of the Defense of Trade Secrets Act, 18 U.S.C. §1836)

(Against All Defendants)

54.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

55.    Defendants by virtue of their fiduciary relationship with Plaintiffs willfully and unlawfully, and by improper means, misappropriated (used, acquired, and disclosed) ,Plaintiffs' trade secrets, including its businesses, financial, operational, and customer information which Plaintiffs used in interstate commerce in the ordinary course of their business.

56.    Plaintiffs took reasonable measures to keep such information secret.

57.    Plaintiffs' information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

58.    Unless restrained, defendants will continue to engage in the acts complained of herein, all to Plaintiffs' irreparable injury.

59.    As a result of defendants' unlawful and willful acts, Plaintiffs have been and will continue to be, irreparably injured, unless Defendants are enjoined immediately by this court.

60.    As a direct and proximate result of the foregoing acts and conduct of defendants, and each of them, Plaintiffs have suffered damages and Defendants have made substantial profits in an amount which cannot now be ascertained or computed, but that is capable of proof at trial and with an accounting.

16
**COMPLAINT**

61.    Defendants' acts were willful, despicable, and done maliciously, oppressively and fraudulently with the intent to harm Plaintiffs and in conscious disregard of Plaintiffs' rights, such that Plaintiffs are entitled to recover punitive or exemplary damages from Defendants in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

(Violation of the California Uniform Trade Secrets Act,

Cal. Civ. Code § 3426 *et seq.*)

(Against All Defendants)

62.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

63.    Defendants by virtue of their fiduciary relationship with Plaintiffs willfully and unlawfully, and by improper means, misappropriated (used, acquired, and disclosed) Plaintiffs' trade secrets, including its businesses, financial, operational, and customer information which Plaintiffs used in interstate commerce in the ordinary course of their business.

64.    Plaintiffs took reasonable measures to keep its information secret.

65.    Plaintiffs' information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

66.    Unless restrained, Defendants will continue to engage in the acts complained of herein, all to Plaintiffs' irreparable injury.

67. As a result of defendants' unlawful and willful acts, Plaintiffs have been and will continue to be, irreparably injured, unless Defendants are enjoined immediately by this court.

68. As a direct and proximate result of the foregoing acts and conduct of defendants, and each of them, Plaintiffs have suffered damages and Defendants have made substantial profits in an amount which cannot now be ascertained or computed, but that is capable of proof at trial and with an accounting.

69. Defendants' acts were willful, despicable, and done maliciously, oppressively and fraudulently with the intent to harm Plaintiffs and in conscious disregard of Plaintiffs' rights, such that Plaintiffs are entitled to recover punitive or exemplary damages from Defendants in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

(Negligence)

(Against SAI, Stabler and Aclan)

70. Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

71. Defendants owed the plaintiffs a duty of care; breached that duty of care; and these breaches were the actual and proximate cause of the plaintiff's injury.

72. Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

**COMPLAINT**

## FIFTH CLAIM FOR RELIEF

(Professional Malpractice)

(Against SAI, Stabler and Aclan)

73.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

74.     Plaintiffs were owed a duty from the Defendants as professionals and IRS licensed enrollment agents to act with the reasonable standard of care for that profession; the Defendants breached that duty by failing to act as they should and committed acts in violation of that duty; these breaches harmed the Plaintiffs and caused injuries; and the injuries sustained are compensable.

## SIXTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty)

(Against SAI, Stabler and Aclan)

75.     Defendants were the fiduciaries of Plaintiffs and are required to adhere to strict requirements as enrolled agents and tax experts, as provided by law.

76.     The California Society of Enrolled Agents (CSEA) of which Stabler and Associates are members states:

"Enrolled Agents are America's Tax Experts.

We are federally-licensed tax practitioners who specialize in tax preparation and have unlimited rights to represent taxpayers before the Internal Revenue Service. If you get a letter from the IRS, or worse, are audited or are the target of a collection action, your EA can speak directly to the IRS on your behalf.

19

**COMPLAINT**

Enrolled Agents are trained in a wide variety of tax situations, both common and unusual. With tax laws changing yearly, it's more critical than ever to consult with a qualified tax specialist on your tax and financial strategy. The Enrolled Agent license is the highest credential the IRS issues. Be confident about your tax return – use an Enrolled Agent."

77.    The National Association of Enrolled Agents (NAEA) states similarly that:

"Enrolled Agents (EAs) are America's Tax Experts, and that Enrolled Agents (EAs) are federally-licensed tax practitioners who may represent taxpayers before the IRS when it comes to collections, audits and appeals. As authorized by the Department of Treasury's Circular 230 regulations, EAs are granted unlimited practice rights to represent taxpayers before IRS and are authorized to advise, represent, and prepare tax returns for individuals, partnerships, corporations, estates, trusts, and any entities with tax-reporting requirements. Enrolled agents are the only federally-licensed tax practitioners who specialize in taxation and have unlimited rights to represent taxpayers before the IRS."

78.    EAs also have a limited communication privilege: "The IRS Restructuring and Reform Act of 1998 provides federally-authorized practitioners (those bound by the Department of Treasury's Circular 230 regulations) with a limited client privilege. This privilege allows confidentiality between the taxpayer and the enrolled agent under certain conditions. The privilege applies to situations in which the taxpayer is being represented in cases involving audits and collection matters."

**COMPLAINT**

79.    31 CFR Part 10 heavily regulates the licensing, qualifications and disqualification of IRS licensed enrolled agents. To be enrolled a person must demonstrate "special competence in tax matters" (10.4).  It requires continued education and certification and compliance with identified ethical standards (10.6).

80.    Conflict of Interest. An IRS Enrolled Agent may not act if he has a Conflict of Interest which is defined in 10.29 as:

"Except as provided by paragraph (b) of this section, a practitioner shall not represent a client before the Internal Revenue Service if the representation involves a conflict of interest. A conflict of interest exists if   (1) The representation of one client will be directly adverse to another client; or  (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person, or by a personal interest of the practitioner."

81.    Best Practices. 10.33 provides that Best Practices for tax advisors, such as enrolled agents are:

"(a) Best practices. Tax advisors should provide clients with the highest quality representation concerning Federal tax issues by adhering to best practices in providing advice and in preparing or assisting in the preparation of a submission to the Internal Revenue Service. In addition to compliance with the standards of practice provided elsewhere in this part, best practices include the following:

(1)    Communicating clearly with the client regarding the terms of the engagement. For example, the advisor should determine

21

**COMPLAINT**

the client's expected purpose for and use of the advice and should have a clear understanding with the client regarding the form and scope of the advice or assistance to be rendered.

(2)   Establishing the facts, determining which facts are relevant, evaluating the reasonableness of any assumptions or representations, relating the applicable law (including potentially applicable judicial doctrines) to the relevant facts, and arriving at a conclusion supported by the law and the facts.

(3)   Advising the client regarding the import of the conclusions reached, including, for example, whether a taxpayer may avoid accuracy-related penalties under the Internal Revenue Code if a taxpayer acts in reliance on the advice.

(4)   Acting fairly and with integrity in practice before the Internal Revenue Service.

(b) Procedures to ensure best practices for tax advisors. Tax advisors with responsibility for overseeing a firm's practice of providing advice concerning Federal tax issues or of preparing or assisting in the preparation of submissions to the Internal Revenue Service should take reasonable steps to ensure that the firm's procedures for all members, associates, and employees are consistent with the best practices set forth in paragraph (a) of this section."

82.   § 10.35 Competence requires that:

"(a) A practitioner must possess the necessary competence to engage in practice before the Internal Revenue Service. Competent practice requires the

appropriate level of knowledge, skill, thoroughness, and preparation necessary for the matter for which the practitioner is engaged."

83.     § 10.36 Procedures to ensure compliance requires that:

"(a) Any individual subject to the provisions of this part who has (or individuals who have or share) principal authority and responsibility for overseeing a firm's practice governed by this part, including the provision of advice concerning Federal tax matters and preparation of tax returns, claims for refund, or other documents for submission to the Internal Revenue Service, must take reasonable steps to ensure that the firm has adequate procedures in effect for all members, associates, and employees for purposes of complying with subparts A, B, and C of this part, as applicable."

84.     These Defendants owed a duty of care, loyalty and good faith to the Plaintiffs, which included an obligation to exercise good judgment, act prudently in handling Plaintiffs affairs, discharge all duties in good faith, act in the best interests of the Plaintiffs, avoid all conflicts of interest, avoid self-dealing, and put the interests of Plaintiffs ahead of their own.

85.     Defendants breached their fiduciary duties of care, loyalty and good faith by not acting in compliance with any of those obligations, whether negligently or willfully, at the expense and to the detriment of Plaintiffs.

86.     Plaintiffs have been damaged by these breaches.

87.     Defendants acts were willful, despicable, and done maliciously, oppressively and fraudulently with the intent to harm Plaintiffs and in conscious disregard of Plaintiffs' rights, such that Plaintiffs are entitled to recover punitive or exemplary damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

(Breach of Contract)

(Against Stabler and Associates)

88.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

89.    Plaintiffs originally entered into an agreement with Stabler and Associates at some time on or after May 21, 2019 . On June 4 a written document was signed by the parties wherein SAI was to "represent [Plaintiffs] you before Internal Revenue Service (IRS) and State & Local Taxing Agencies concerning compliance requirements for personal and business entities. Don Stabler will have primary responsibility for your case. Other professional and support staff may assist him, as requested, to work on your tax matters."

90.    The services to be provided were identified as:

"1) Due diligence for compliance requirements with IRS and State & Local Taxing Agencies (California! Montana/ Delaware).

2) Accounting and tax preparation for Individual and Corporate/ LLCs for all years involved.

3)    Negotiation with IRS and State & Local Taxing Agencies for tax delinquencies upon filing of all tax returns."

91.    SAI breached this Agreement by failing to provide to Plaintiffs any contracted for services and acted incompetently and inadequately, and indeed placed Plaintiffs in jeopardy with the IRS, while acting against the interest of Plaintiffs and in SAI's own self-interests.

92.    SAI also violated its covenants of good faith and fair dealing by acting in these ways.

93.    Plaintiffs have performed all obligations required of them to be performed under the Agreement.

94.    As a direct and proximate result of SAI breaches, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

## EIGHTH CLAIM FOR RELIEF

(Fraud and Deceit)

(Against All Defendants)

95.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

96.    Prior to and during the parties relationship, Defendants SAI and Stabler and Aclan as fiduciaries and IRS licensed Enrollment Agents, represented to Plaintiffs that they would work for and were working on Plaintiffs sensitive and confidential tax issues, and led Plaintiffs to believe that they were acting in the best interests of Plaintiffs, and that all information and documents collected were necessary for Defendants representation.

97.    These statements were false in that Plaintiffs discovered that Defendants had done nothing for Plaintiffs and instead had used all of Plaintiffs information and documents to build Defendants competing website and begun competing with Plaintiffs.

25

**COMPLAINT**

98.    Defendants were given direct knowledge of Plaintiffs documentation business and based thereon Defendants concealed their true intention to hijack Plaintiffs' information and web content and compete with Plaintiffs businesses, and Defendants intended that Plaintiffs' trust and rely upon Defendants representations.

99.    Plaintiffs reasonably relied on Defendants representations and were unaware of Defendants actual actions.

100.    As a direct and proximate result of Defendants representations and concealments, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

101.    Defendants acts were willful, despicable, and done maliciously, oppressively and fraudulently with the intent to harm Plaintiffs and in conscious disregard of Plaintiffs' rights, such that Plaintiffs are entitled to recover punitive or exemplary damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

(Conversion)

(Against All Defendants)

102.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

103.    Defendants intentionally and substantially acquired assets of the businesses of Plaintiffs and as a consequence are reaping monies and properties which would otherwise be Plaintiffs.

104.    Plaintiffs did not consent to Defendants' conversion.

**COMPLAINT**

105.   Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

106.   Unless restrained, defendants will continue to engage in the acts complained of herein, all to Plaintiffs' irreparable injury.

107.   As a result of Defendants' unlawful and willful acts, Plaintiffs have been and will continue to be, irreparably injured, unless defendants are enjoined immediately by this court.

108.   As a direct and proximate result of the foregoing acts and conduct of Defendants, and each of them, Plaintiffs have suffered damages and Defendants have made substantial profits in an amount which cannot now be ascertained or computed, but that is capable of proof at trial and with an accounting.

109.   Defendants' acts were willful, despicable, and done maliciously, oppressively and fraudulently with the intent to harm Plaintiffs and in conscious disregard of Plaintiffs' rights, such that Plaintiffs are entitled to recover punitive or exemplary damages from Defendants in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

(False Representations and Advertising, 15 U.S.C. § 1125(a))

(Against Aclan, Gorkian and U.S. Vessel Registrar)

110.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

111.   This claim arises under § 43(a) of the Lanham Act. These Defendants and Plaintiffs are competitors.

112.   These Defendants' willful and continued use of US Vessel Registrar as a company name, website name, and domain names, falsely represents to the

27

**COMPLAINT**

consuming public that it is a "registrar" for "US vessels", when only the NVDC, a US government agency, is the registrar of vessels.

113.   These are false representations and false advertising and are calculated to deceive and cause the public to be misled into believing that Defendants' business is a Registrar when it is not.

114.   As a direct and proximate result of Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial, and Plaintiffs are entitled to disgorgement of Defendants' profits.

115.   Plaintiffs have no adequate remedy at law.

## ELEVENTH CLAIM FOR RELIEF

(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 and Common Law)

(Against Aclan, Gorkian and U.S. Vessel Registrar)

116.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

117.   This count arises under Section 17200 of the California Business and Professions Code and under the common law of the State of California.

118.   The named Defendants are engaging in acts of unfair competition by wrongfully acquiring information from Plaintiffs' about their businesses and by causing the public to be deceived that the named Defendants Website is something else, which are unfair, unlawful and fraudulent actions.

119.   Defendants are engaging in acts of unfair competition in a manner which is calculated to deceive the public and cause the public to use the named Defendants' services rather than Plaintiffs'.

120.   Such unfair competition has caused and, unless enjoined, will continue to cause Plaintiffs' irreparable harm.

121.   Plaintiffs have no adequate remedy at law and demand a permanent injunction and restitution of Defendants' ill-gotten gains.

## TWELFTH CLAIM FOR RELIEF

(Intentional Interference with Prospective Economic Advantage)

(Against All Defendants)

122.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs above, as fully set forth herein.

123.   Plaintiffs had entered relationships with its customers and had the prospect of future business with present and future customers, which had benefitted Plaintiffs, and but for Defendants acts, would have continued to benefit Plaintiffs.

124.   Defendants had actual knowledge of these actual and prospective relationships.

125.   Defendants engaged in independent wrongful acts, including but not limited to all violations of law set forth in this Complaint.

126.   Defendants intended to disrupt and disrupted Plaintiffs' actual and prospective relationships with their customers.

**COMPLAINT**

127.   As a direct and proximate result of  Defendants' illegal activities, Plaintiffs have suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at the time of trial.

128.   Defendants' acts were willful, despicable, and done maliciously, oppressively and fraudulently with the intent to harm Plaintiffs and in conscious disregard of Plaintiffs' rights, such that Plaintiffs are entitled to recover punitive or exemplary damages from Defendants in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs pray that the Court:

A. temporarily, preliminary, and permanently enjoin and restrain Defendants and all other persons acting in concert or participation with Defendants from:  Operating, sing, distributing, licensing, selling, developing, displaying, disclosing, delivering, advertising and/or otherwise marketing or disposing of their websites, the domain names, and any information and documents obtained from Plaintiffs;  Conducting any vessel documentation business; Using or disposing of any of Plaintiffs' information or documents, of any kind; Using or registering any domain name similar to any of Plaintiffs domain names;

B. declare, adjudge and decree that Defendants' operation of the website, and use of Plaintiffs' information, the website content, and the company and domain names constitute a false designation of origin, unfair competition, injury to business reputation under California state law, unjust enrichment and copyright infringement;

C. provide Plaintiffs with expedited discovery;

**COMPLAINT**

D. order Defendants to turn over to Plaintiffs all past and present documents and records and information obtained from Plaintiffs in any and all format and delete all such records from all of Defendants locations;

E. order Defendants to turn over all of Defendants records in any format relating to the Plaintiffs, the IRS, and contacts with others, including all working papers and work product;

F. order Defendants to turn over to Plaintiffs all of Defendants' competing website's customer information, data and financial records;

G. order a forfeiture of any computer, computer system, computer networks, or any software or data used by Defendants to commit the acts alleged in this Complaint, or used by Defendants as a repository for the storage of software or data obtained;

H. order defendants to file with this Court and serve upon Plaintiffs within 30 days of being served with this Court's injunction issued in this action, a written report signed by each Defendant under oath, setting forth in detail the way each such defendant complied with the injunction;

I. enjoin Defendants from further conduct which infringes the Plaintiffs' rights;

J. award to Plaintiffs a reasonable royalty;

K. award to Plaintiffs compensatory damages as provided by law, including but not limited to lost goodwill, lost profits, and expenditures to verify damages from defendants' unlawful actions;

L. award to Plaintiffs statutory damages as provided by law;

**COMPLAINT**

M. award to Plaintiffs multiple damages as provided by law;

N. award to Plaintiffs punitive damages as provided by law;

O. award to Plaintiffs restitution as provided by law;

P. order Defendants to account for all revenues and profits from the operation of their competing website;

Q. award to Plaintiffs their costs, disbursements and attorney fees incurred;

R. award to Plaintiffs prejudgment interest as provided by law; and

S. award to Plaintiffs such other and further relief as this Court may deem just and proper.

DATED: October 15, 2019                 **LEE, HONG, DEGERMAN, KANG & WAIMEY**

By:
    David N. Makous
    Attorney for Plaintiffs

**COMPLAINT**

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED: October 15, 2019

**LEE, HONG, DEGERMAN, KANG & WAIMEY**

By:_____

David N. Makous
Attorney for Plaintiffs

33
**COMPLAINT**